UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

BILLY G. BIGGS,                    )
                                   )
                Movant,            )
                                   )
        vs.                        )        Case No. 1:15CV00101 SNLJ
                                   )
UNITED STATES OF AMERICA,          )
                                   )
                Respondent.        )

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Billy G. Biggs, a person in federal custody. On July 17, 2014, Biggs plead guilty before this Court to the offense of aiding and abetting the burglary of a pharmacy and aiding and abetting the possession with intent to distribute controlled substances and, on December 1, 2014, this Court sentenced Biggs to the Bureau of Prisons for a term of 151 months. Biggs' § 2255 motion, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

## FACTS

**A. The Indictment.**

On March 20, 2014, a Grand Jury in the Eastern District of Missouri, Southeastern Division, returned a two-count Indictment against Billy G. Biggs and two other co-defendants. Count I of the Indictment charged that on or about January 12, 2014, Biggs, aided and abetted by his co-defendants, committed the crime of Aiding and Abetting the

Burglary of a Pharmacy in violation of Title 18, United States Code, Section 2118(b) and (c)(1) and Title 18, United States Code, Section 2. Count II of the Indictment charged that Biggs, aided and abetted by his co-defendants, committed the crime of Aiding and Abetting the Possession of Controlled Substances With the Intent to Distribute in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2. On March 25, 2014, Biggs made his initial appearance on the federal charges. After the initial appearance, Federal Defender Michael A. Skrien was appointed to represent Biggs. Biggs was arraigned on March 28, 2014. At that arraignment, Biggs pled not guilty to the charges.

**B. Pretrial Motions.**

On April 21, 2014, Biggs' attorney filed a Waiver of Filing of Pretrial Motions. In that Waiver, Biggs' attorney represented that his client did not want to file any pretrial motions. On April 29, 2014, Biggs appeared before United States Magistrate Judge Abbie Crites-Leoni and formally waived his right to file pretrial motions. His case was set for trial or plea on July 17, 2014.

**C. Plea Agreement.**

The parties signed a written plea agreement that set out the terms and conditions of Biggs' guilty plea to the charges. The Government agreed that, in exchange for Biggs' guilty plea to the charges, the Government would not charge Biggs with any further charges related to the burglary of Davis Pharmacy on January 12, 2014. The parties also agreed:

The parties further agree that either party may request a sentence above or below

the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

Plea Agmt., p. 2.

The Plea Agreement contained an agreed-upon Statement of Facts as to Biggs' offense conduct:

On January 12, 2014, at around 2:46 a.m., Craig Nelson and his wife, Cynthia Nelson, were asleep in their home on Mott Street in New Madrid, Missouri. They were startled from their sleep by the sound of a car door slamming and their dog barking. The Nelsons looked out of one of their windows and saw a silver Buick vehicle backed up to the front door of Davis Pharmacy. Two men were out of the car. One of the men broke the glass out of the front door. Both of those men entered the pharmacy. A third person was seated in the Buick. Mrs. Nelson called the New Madrid police department to report the burglary.

After a few minutes, the two men came out of the pharmacy, carrying large duffel bags. They got in the Buick, which drove off the parking lot. The Nelsons saw a New Madrid police vehicle arrive at the parking lot just behind the Buick. Officer John Dubois was driving the New Madrid police vehicle. He began chasing after the Buick. Other officers were called to the chase, which continued to Highway 55 and onto side roads. During the chase, the occupants of the Buick began throwing items out of the Buick. The officers later recovered some of those items, which included medications stolen from Davis Pharmacy, clothing and a wood maul.

The officers were able to get two of their patrol cars in front of the Buick. The driver of the Buick attempted to ram the Buick into the officers' cars, putting the lives of the officers at risk. The officers managed to evade the Buick. The chase continued for several miles until the officers began shooting at the Buick with their firearms. The Buick then turned into the Pilot Truck Stop parking lot and stopped. Officers arrived and arrested the occupants of the Buick. Those occupants were Troy D. Stephenson, Billy G. Biggs and Martinez M. Warren. The Buick was a rental vehicle that had been driven by Stephenson, Biggs and Warren from their homes in Memphis, Tennessee, that same day as the burglary.

Davis Pharmacy employees examined the store and determined that $27,243.66 in prescription medications had been stolen. Those stolen medications included oxycodone, hydrocodone and morphine. The total amount of drugs stolen amounted to $27,243.66. Repairs to the Davis Pharmacy building totaled $815.62.

Davis Pharmacy is a pharmacy that was registered with the Drug Enforcement Administration under Section 302 of the Controlled Substances Act. The employees determined that only selected medications were taken. The medications taken by Stephenson, Biggs and Warren are commonly sold illegally. Officers reviewed the types of medications taken by Stephenson, Biggs and Warren and came to the opinion that the three men took the medications in order to distribute them to others for cash or other consideration and that the medications were not to be used for their personal use.

The location of the burglary of Davis Pharmacy by the defendant was in New Madrid County, Missouri, within the Eastern District of Missouri.

Plea Agmt., pp. 3 – 5.

The parties did not reach any agreement as to Guideline Offense Levels, except that Biggs was to receive a reduction of three levels for timely acceptance of responsibility. The parties did not come to any agreement as to Biggs's Criminal History Category. (Plea Agmt., p. 6)

Biggs and the Government agreed to waive their rights to appeal any within-Guidelines' range sentence. Biggs reserved the right to appeal any sentence imposed above the Guidelines range. The Government reserved the right to appeal any sentence imposed below the Guideline range. (Plea Agmt., p. 7) Biggs agreed to waive his right to file a petition pursuant to Title 26, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel. (Plea Agmt., p. 7)

**D. The Plea Hearing.**

On July 17, 2014, this Court conducted a plea hearing in this case. Biggs appeared with his attorney. Biggs was sworn and answered questions put to him by this Court. Biggs stated that he had no complaints concerning his attorney and was satisfied with the way his attorney had handled his case. (Plea Tr., p. 5, 6) Biggs stated that he had

reviewed the written Plea Agreement and that his attorney had gone over it in detail with him. (Plea Tr., p.8) Biggs agreed that he understood that his sentence would be influenced by the advisory Sentencing Guidelines, but that the eventual sentence would be up to the District Court. (Plea Tr., pp. 10) Biggs understood that the range of punishment for Count I was a term of imprisonment up to twenty five years and for Count II, the range of imprisonment was up to twenty years. Biggs understood that this Court would consider the full range of punishment. (Plea Tr., pp. 10 – 11)

The Government recited the facts of the case that were set out in the written Plea Agreement. (Plea Tr., pp. 13 – 15) This Court asked whether all the facts stated by the Government were true and correct. Biggs replied that the part of the statement of facts that the officer got his car in front of the Buick and that the driver tried to ram the car into the officer was not true. (Plea Tr., p 16) There was a short discussion about whether that fact would be an element of the crime. The Government pointed out that the fifth element for one of Bigg' counts depended on proof that, in committing the offense, the defendant assaulted or put in jeopardy the life of any person. (Plea Tr., p. 16) Biggs spoke to his attorney privately, then agreed that all the statements made by the prosecutor were accurate:

> Court: All right. Well, my question was whether you admit all of the – all the statements the prosecutor made are true and correct?
>
> Biggs: Yes, sir.
>
> Court: Okay. Why did you say differently a minute ago then? I don't understand.

Skrien: Can I have just a moment?

Court: Yeah.

(Discussion between Biggs and his attorney)

Biggs: Yes, sir.

Court: Fine. So you do admit that everything he said - - the prosecutor said

is true and correct?

Biggs: Yes, sir.

Court: And you admit that you did all those acts he described?

Biggs: Yes, sir.

Court: No question about it then?

Biggs: Yes, sir.

Court: So there is no question?

Biggs: No question.

(Plea Tr. pp. 17, 18)

This Court then went over the elements of both offenses, as follows:

Court: Okay. I'm going to go over these elements with you specifically on

Count I. Do you admit that you aided and abetted by others knowingly

and intentionally entered the business premises of Davis Pharmacy

with the intent to steal material or compound containing quantities

of controlled substances?

Biggs: Yes, sir.

Court: Do you also admit that Davis Pharmacy was registered with the DEA

under Section 302 of the Controlled Substances Act?

Biggs: Yes, sir.

Court: And that the replacement cost of the controlled substances taken by you and others was $500 or more: Do you admit that?

Biggs: Yes, sir.

Court: And that you admit you traveled in interstate commerce or used any facility in interstate commerce to facilitate entry into that pharmacy: Do you admit that?

Biggs: Yes, sir.

Court: And finally, you admit that in committing the offense the defendant or you acting with others assaulted or put in jeopardy the life of the law enforcement officers in question: Do you admit that too?

Biggs: Yes, Your Honor.

Court: That you knew you were in possession of those controlled substances, and that you intended to distribute some or all to another person or persons: Do you admit all that?

Biggs: Yes, Your Honor.

(Plea Tr. pp. 18 – 20)

Biggs then pled guilty to Counts I and II of the Indictment. (Plea Tr., p. 20) A sentencing hearing was set for Biggs for October 14, 2014.

**E. The Presentence Investigation Report.**

A Presentence Investigation Report (P.S.R.) was prepared by United States Probation Officer Sherry L. Persinger. That report recommended that Biggs' base offense level be set at 24, pursuant to U.S.S.G., § 2D1.1(a)(5), due to the drug quantity involved in this case (P.S.R., ¶ 26) The P.S.R. recommended that six levels be added for an assault on a law enforcement officer during the commission of the offense or immediate flight from that offense, pursuant to U.S.S.G., § 3A1.2(c)(1). (P.S.R. ¶ 28) Two levels were added for creating a substantial risk of death or serious bodily injury during the flight from the crime, pursuant to U.S.S.G., § 3C1.2. (P.S.R., ¶ 30) With three levels of a reduction for acceptance of responsibility, Biggs' Total Offense Level was 29. (P.S.R., ¶ 35) The P.S.R. recognized that Biggs was the driver of the vehicle that fled from the police. (P.S.R. ¶ 14)

Biggs' criminal history is set out below. On September 11, 2006, Biggs was convicted of the felony of Reckless Aggravated Assault in Tennessee. He received a sentence of two years imprisonment, but that sentence was suspended and Biggs was placed on probation for two years. On August 6, 2008, that probation was revoked and the two year sentence was imposed. Biggs received three criminal history points for that conviction. (P.S.R. ¶ 38)

On May 4, 2007, Biggs was convicted of the misdemeanor offenses of Possession of Marijuana, Unlawful Possession of a Weapon, and Possession of an Item with an Altered/Missing ID Plate in Tennessee. Biggs was placed on diversion for those convictions. He received one criminal history point. (P.S.R. ¶ 39)

On September 17, 2008, Biggs was convicted of the felony of Aggravated Assault in Tennessee. He was sentenced to a term of imprisonment of six years. Biggs received three criminal history points for that conviction. (P.S.R. ¶ 40)

On March 6, 2009, Biggs was convicted of the misdemeanor of Possession of a Controlled Substance in Tennessee. He received a sentence of imprisonment of 11 months and 29 days. Biggs received two criminal history points for that conviction. (P.S.R. ¶ 41)

Based on those convictions, Biggs was given a Criminal History Category of IV. With a total offense level of 29, Biggs' Sentencing Guideline range was calculated to be 121 to 151 months. (P.S.R. ¶ 72)

**F. Objections to the Presentence Investigation Report.**

On November 20, 2014, Biggs filed a Sentencing Memorandum in which he objected to the drug quantity contained in the P.S.R. He also objected to the six level enhancement for assaulting a police officer and the two level enhancement for creating a risk of injury to any other person. Biggs requested a below-Guideline range sentence. Those objections were set down for a hearing at the sentencing hearing.

**G. The Sentencing Hearing.**

On December 1, 2014, this Court conducted a sentencing hearing. This Court allowed the Government to call witnesses to rebut the defendant's objection to the P.S.R. United States Probation Officer Sherry Persinger first testified as to her calculation of the drug quantity. Because that issue is not now contested by Biggs in this Petition, there is no need to set out her testimony.

The Government called Officer John Dubois to testify as to the disputed part of the P.S.R. that dealt with the assault on police officers and the danger posed to other citizens. Dubois was the New Madrid City Police Officer who first responded to the report of a burglary at Davis Pharmacy. Dubois started following Biggs's car as soon as that car left the Davis Pharmacy parking lot. Dubois turned on his emergency lights. Bigg's car fled from the scene at a high rate of speed, going 75 miles per hour down the residential street in New Madrid to escape the scene. (Sent. Tr. pp. 18 – 20)

Biggs' car reached Interstate 55 and started traveling south. Other officers joined the chase. Biggs' car reached speeds of over 120 miles per hour during the interstate portion of the chase. Biggs' car exited the interstate at the Portageville exit. His car traveled through the City of Portageville at 80 miles per hour, jumping railroad tracks and continuing down Main Street in that city. (Sent. Tr. pp. 20 – 22)

The chase continued on other roads until it reached the city of Wardell. Biggs' car was traveling at 80 to 90 miles per hour at this point. At the nearby exit ramp, Bigg' car tried to put another deputy's car off the right side of the road. Dubois testified:

> It appeared to me that they were unsure of the direction they were wanting to go. The vehicle slammed on its brakes and then went to the right pushing Deputy Brandenburg almost to the guardrail. I went around him and split both vehicles somehow.

(Sent. Tr. pp. 22 – 24)

Dubois was then asked what the Biggs' vehicle did after that. Dubois responded:

> It then tried to turn around and was coming at Deputy Brandenburg head on for a minute and then hit the northbound ramp back on I-55 going north.

(Sent. Tr. p. 24)

Deputy Brandenburg testified that he would have had a head on collision with Bigg's car if he hadn't swerved at the last moment. He also testified that the Biggs's car ran him off the road during the pursuit. (Sent. Tr. pp. 37, 38)

After hearing that testimony, This Court overruled Biggs' objections to the P.S.R. and adopted the factual findings in that report. Biggs' sentencing Guideline range was found to be 121 to 151 months. After argument and allocution, this Court sentenced Biggs to a term of imprisonment of 151 months, concurrent on each count, and consecutive to any other sentence of imprisonment. Biggs was ordered to serve two years of supervised release and to make restitution for the merchandise taken and the damage to the pharmacy. Biggs was also assessed a $200 special assessment. (Sent. Tr. pp. 54 – 61)

**H. The Appeal.**

Biggs did not appeal his conviction or sentence.

**I. Petition for Post-Conviction Relief Pursuant to § 2255.**

On June 26, 2015, Biggs filed his Petition under 28 U.S.C. § 2255, asking that this Court set aside Biggs' conviction and sentence. Biggs alleges several errors in his conviction. Those alleged errors include the following:

1.      Ineffective assistance of counsel – Failure to investigate nature and consequences of the statutory offense.

2.      Ineffective assistance of counsel – Failure to file pretrial motions, including a motion to suppress as requested by Biggs.

3.      Ineffective assistance of counsel – Misapplication of Sentencing Guidelines.

4.      Ineffective assistance of counsel – Counsel failed to file post-conviction motions.

5. Violation of Biggs' Fifth Amendment Rights.

6. Violation of Biggs' Due Process Rights.

7. Procedural defects pursuant to Rule 11.

8. Procedural defects pursuant to Rule 32.

9. Misapplication of U.S.S.G. § 3A1.2.

10. Misapplication of U.S.S.G. § 3C1.2.

11. Biggs was subjected to a violation of his rights against Double Jeopardy by the application of 18 U.S.C. § 2118(c)(1), U.S.S.G. § 2A2.2 and U.S.S.G. § 3A1.2.

12. Breach of plea agreement by using Sentencing Enhancement provisions.

13. Misapplication of Sentencing Guidelines §§ 3A1.2 and 3C1.2.

None of Biggs's complaints have any merit.

**J. Supplemental Petition for Post-Conviction Relief Pursuant to § 2255.**

On October 26, 2015, Biggs filed with leave of Court his supplemental motion under §2255 asserting additional grounds for setting his sentence and conviction aside.

Those alleged errors include the following:

1. Ineffective Assistance of Counsel – Failure to Raise an "Owens" Claim for Charging Different Drugs in the Same Count.

2. Ineffective Assistance of Counsel – Misadvised the Petitioner as to the Consequences of the Conviction.

3. Ineffective Assistance of Counsel – Failure to Object to the Six Point Sentencing Enhancement.

**APPLICABLE LAW**

**A. NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF**

28 U.S.C. § 2255 provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. *Id.*, at 225-6. *See also United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995) *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show

petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. 466 U.S. at 687. This requires the movant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More recently the Eighth Circuit has described the Strickland test as follows: "Whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question,

then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064-65. Counsel's challenged conduct is viewed as of the time of his representation. "And we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. A reviewing court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

The standard to be used in a collateral charge of ineffective assistance of counsel following a guilty plea is governed by *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366 (1985), which applies the holding of *Strickland* to instances involving guilty pleas. A movant who pleads guilty upon advice from counsel may only contest the voluntary and intelligent character of the plea by establishing that the advice given was not within the range of professional competence required of the attorney in a criminal case. *Lockhart*, 474 U.S. at 56, citing *Tollett v. Henderson*, 411 U. S. at 267.

## DISCUSSION

**Issue # 1.     Ineffective assistance of counsel – Failure to investigate nature and consequences of the statutory offense.**

Biggs makes the allegation that his attorney was ineffective for failing to investigate the nature and consequences of his statutory offense, but he fails completely to describe what error his attorney made regarding the statutory nature of that case. It may be that Biggs is arguing that his attorney was ineffective for failing to address the issues raised below. This Court will address each of those other issues in the order that Biggs raised them. But this allegation, standing alone, provides neither factual support nor legal conclusions to allow a meaningful review. Furthermore, as discussed below, there was no error in sentencing Biggs, or in the application of the Sentencing Guidelines and his attorney was not ineffective.

This Court agrees that a failure of defense counsel to conduct the necessary investigation into the facts surrounding the crime might result in prejudice sufficient to justify the grant of a § 2255 motion. *United States v. Johnson*, 582 F.2d 1186, 1188 (8th Cir. 1978). However, such claimed failure must be supported by specific allegations, such as the failure of counsel to interview witnesses, to seek factual information in the possession of the Government, or to otherwise explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. *Id.*

In *Johnson*, the defendant made a bare-bones allegation, similar to that raised by Biggs, that his attorney failed to properly investigate the circumstances of his crime. The Eighth Circuit upheld the district court's denial of that claim on grounds that he did not set forth adequate factual support for his claim. *Id.* ("In the absence of any such specific allegations, Johnson's claim for relief must be denied.")

In order for Biggs to succeed in claiming that his attorney was ineffective for a failure to properly investigate the facts of his case, Biggs would have to prove that he was prejudiced by his attorney's failure to investigate. Proof of that prejudice is proof that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366 (1985). Biggs has completely failed to carry his burden of proof.

Biggs faults his attorney's investigation of the case, but a quick review of the Statement of Facts reveals the strength of the Government's case against Biggs and the certainty that he would have pled guilty and not stood trial. Biggs was caught fleeing from the burglarized pharmacy. The witnesses across the street and the police officers followed Biggs and his car until it was stopped after a long vehicle chase. The evidence that would have been presented against Biggs included many drugs from the pharmacy that were thrown from his vehicle. When the car finally stopped, Biggs was the driver.

Biggs had no chance at a trial; he merely pled guilty because he was guilty. No amount of investigation could have changed the facts he faced, nor would that investigation found facts that would exonerate Biggs. Even at this late date, Biggs fails to inform this Court what his attorney could have discovered by additional investigation.

Biggs's complaint that his attorney failed to properly investigate his case is unsupported by any facts and fails to state grounds upon which relief can be granted by this Court. This issue will be dismissed by the Court.

**Issue # 2.    Ineffective assistance of counsel – Failure to file pretrial motions, including a motion to suppress as requested by Biggs.**

In this ground, Biggs faults his attorney for failing to file a motion to suppress evidence. Biggs does not state exactly what evidence he would have this Court suppress and it is very difficult to understand what evidence he could have suppressed in this case. Biggs fails to set out any reason based on case law, statute or any other legal authority that any evidence in his case could have been suppressed.

When arrested, Biggs did not make a statement. So there is no evidence to suppress in terms of a defendant's statement. No evidence was seized from the car that Biggs was driving.

Biggs and/or his confederates threw plenty of evidence from their car during the vehicle chase. But that evidence was abandoned by Biggs, so he had no grounds to suppress it. *See United States v. Miller*, 108 F.3d 967, 968-69 (8th Cir. 1997) ("Besides failing to present any evidence to support his motion to suppress, Miner abandoned the gun by throwing it to the ground when the police were in hot pursuit."); *United States v. Hollman*, 541 F.2d 196, 198 (8th Cir. 1976) (Defendant abandoned drugs by throwing them out a car window).

Biggs does not set forth any facts specifying why any evidence would be suppressed or how his attorney was ineffective. He merely concluded that his lawyer was ineffective for failing to file a motion to suppress. Biggs's burden for this type of issue is to demonstrate both cause for his failure to file a motion to suppress <u>and</u> prejudice resulting from the alleged violation of his rights. *United States v. Johnson*, 707 F.2d 317, 320 (8th Cir. 1983), citing *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584 (1982). Biggs has alleged neither basis for his lack of a motion to suppress. He has not alleged

that his motion was wrongfully refused by his attorney, nor has he alleged any grounds that such a motion would have been successful.

Counsel is not ineffective for failing to pursue a motion to suppress that he reasonably believes would be futile. *Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014); *United States v. Luke*, 686 F.3d 600, 606 (8th Cir. 2012. Biggs has not demonstrated that any motion to suppress would have been successful on any basis. The prejudice flowing from an attorney's failure to file a suppression motion is determined by examining the likely success of the motion. *Carroll v. United States*, 962 F.2d 12, *2 (8th Cir. 1992). Since Biggs has not shown any reason that a motion to suppress would have been successful, he has not shown that he suffered prejudice, no matter what his instructions were to his attorney. This issue will be denied.

### Issue # 3.    Ineffective assistance of counsel – Misapplication of Sentencing Guidelines.

In his petition, Biggs asserts that his attorney "was aware of 'procedural defects' and misapplication of guidelines against the petitioner." The § 2255 petition form used by Biggs for filing this action informs Biggs to "State the facts supporting each ground. In spite of that requirement, Biggs did not state any facts supporting this claim, or any other claim in "Ground one" of his petition. This Court assumes that Biggs' complaints in this issue are related to the Sentencing Guidelines issues discussed in the remainder of his petition. This Court will address those issues in the points below. But this point neither sets out any legal basis for relief nor facts that allow a discussion of what Biggs's complaint is. This issue will be denied for Biggs' failure to set forth facts to support it.

**Issue # 4.     Ineffective assistance of counsel – Counsel failed to file post-conviction motions.**

In this issue, Biggs claims that his attorney "failed to file any and all post-conviction motions." He further states that "Petitioner understood that counsel would assist him in the post- conviction stages and filing direct appeal, which did not happen. Significantly, Biggs did not allege that he directed his attorney to file an appeal; he only "understood" that it would happen. It also appears that Biggs is laboring under the false impression that he is entitled to appointed counsel for post-conviction proceedings. He is not.

This issue was discussed in *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990 (1987). In that case, the Supreme Court noted:

> We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions (Citations omitted), and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals.

*Finley*, 481 U.S. at 555.

Biggs was not entitled to the assistance of counsel for the filing of his petition. Only if this Court determined that an evidentiary hearing should be held, would it be required to appoint counsel for that purpose pursuant to Rule 8(c) of the Rules for Section 2255 Proceedings. However, Biggs is not entitled to the assistance of counsel for the filing of a Section 2255 motion.

Biggs seemed to assert that his attorney should have filed a direct appeal, but he did not allege that he directed his attorney to file that appeal. The failure of an attorney to

file an appeal <u>at a client's request</u> is ineffective assistance of counsel. *Yodprasit v. United States*, 294 F.3d 966, 969 (8th Cir. 2002) But Biggs did not allege that he had directed his attorney to file a notice of appeal, so his allegation fails on this basis. The attorney must have been made aware of the client's desire to appeal, or there is no prejudice shown to the defendant. *Luke*, 686, F.3d at 606, upholding the denial of Luke's § 2255 claim that his attorney failed to file a notice of appeal on the basis that Luke did inform his attorney that he desired an appeal to be filed.

Biggs has not alleged that his attorney refused to file a notice of appeal and he is not entitled to the assistance of counsel to file this petition. This issue is without merit and shall be denied.

**Issue # 5.** **Violation of Biggs's Fifth Amendment Rights.**

**Issue # 6.** **Violation of Biggs's Due Process Rights.**

**Issue # 7.** **Procedural defects pursuant to Rule 11.**

**Issue # 8.** **Procedural defects pursuant to Rule 32.**

**Issue # 9.** **Misapplication of U.S.S.G. § 3A1.2.**

**Issue # 10.** **Misapplication of U.S.S.G. § 3C1.2.**

**Issue # 11.** **Biggs was subjected to a violation of his rights against Double Jeopardy by the application of 18 U.S.C. § 2118(c)(1), U.S.S.G. § 2A2.2 and U.S.S.G. § 3A1.2.**

**Issue # 12.** **Breach of plea agreement by using Sentencing Enhancement provisions.**

**Issue # 13.** **Misapplication of Sentencing Guidelines §§ 3A1.2 and 3C1.2.**

This Court will discuss the remainder of Biggs's points together, as they appear to be related. Basically, Biggs argues that this Court improperly applied offense level enhancement Guideline sections 3A1.2 and 3C1.2. He states several reasons for that argument that are addressed below.

Biggs first argues that his Fifth Amendment rights were violated by the application of certain Guideline enhancements to his sentencing calculations. Biggs styles his claim as a Fifth Amendment Due Process claim, but does not state how his Fifth Amendment rights or his Due Process rights were violated, except to claim that this Court wrongfully applied U.S.S.G. §§ 3A1.2 and 3C1.2 to his sentencing calculations. However, those Guideline sections were properly applied, and Biggs did not suffer any violation of some unspecified Fifth Amendment right or Due Process right.

One of Biggs' allegations of error is that applying the Sentencing Guidelines to his case amounts to a violation of his Double Jeopardy rights. The Double Jeopardy Clause provides: "Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." United States Constitution, Amendment 5. The Double Jeopardy Clause protects against both successive punishment and successive prosecution. *Witte v. United States*, 515 U.S. 389, 395-96, 115 S.Ct. 2199 (1995). The test for determining whether a defendant has been subjected to two punishments for the same crime was set out in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180 (1932). The *Blockburger* test for Double Jeopardy issues is "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires

proof of a fact which the other does not. *Witte*, 515 U.S. at 396. The *Blockburger* test relies on whether two separate statutory provisions are charged in two separate cases. In Biggs' case, he was only charged with one statutory offense for each count. The fact that multiple Sentencing Guidelines were applied did not amount to a second "charge." A second charge would only occur if there was another statutory violation, which there was not. Biggs is simply mistaken as to his claim that the Double Jeopardy Clause affects the use of the Sentencing Guidelines in his case. He has not claimed that Counts I and II were multiple punishments for the same crime, so this Court will not address that issue.

Biggs' Double Jeopardy argument "misperceives the distinction between a sentence and a sentence enhancement." *United States v. Mocciola*, 891 F.2d 13, 17 (1st Cir. 1989). Double Jeopardy does not apply to sentence enhancement issues based on Guideline calculations; it only applies to separate sentences. And those separate sentences can only come from separate cases for any court to question whether Double Jeopardy applies.

Other cases have held that the application of Sentencing Guideline provisions that result in an increased sentence is not another charge and does not violate a defendant's Double Jeopardy rights. This exact issue was discussed in *United States v. Thomas*, 895 F.2d 1198 (8th Cir. 1990). In that case, Thomas made the same claim, that enhancing his sentence under the sentencing guidelines violated his Double Jeopardy rights and amounted to multiple punishments for the same offense. *Id.*, at 1201. The Eighth Circuit rejected Thomas's argument, noting that a defendant's Double Jeopardy rights are not violated by an increase in their sentence due to the application of the Sentencing

Guidelines. *Id*. Other cases have come to the same conclusion, that the imposition of an

enhanced sentence under the Sentencing Guidelines does not constitute subsequent

punishment for Double Jeopardy purposes. *See United States v. Mack*, 938 F.2d 678, 681

(6th Cir. 1991); *United States v. Wright*, 891 F.2d 209, 212 (9th Cir. 1989). Biggs'

contention that this Court violated his Double Jeopardy rights by the use of multiple

Sentencing Guideline enhancements has been rejected by every court to consider that

issue.

For his next complaint, Biggs argues that the Government violated its Plea

Agreement that it would not prosecute Biggs for another charge by this Court's use of

Sentencing Guideline enhancements. Biggs states that the Government agreed that it

would not prosecute Biggs with any further charges as part of its promises in the parties'

written Plea Agreement. That portion of the Plea Agreement states:

> Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange
> for the defendant's voluntary plea of guilty to the charges made in the Indictment
> of Aiding and Abetting the Burglary of a Pharmacy (Count I) and Aiding and
> Abetting the Possession With Intent to Distribute Controlled Substances (Count
> II), the government agrees that no further federal prosecution will be brought in
> this District relative to the defendant's participation in the burglary of Davis
> Pharmacy on January 12, 2014, of which the Government is aware at this time.

Plea, p. 1.

The Government abided by its agreement; no further charges were filed against

Biggs for his participation in the Davis Pharmacy burglary. Biggs posits his argument as

a breach of contract by asserting that the use of Guidelines enhancement provisions

violated the parties' agreement not to charge Biggs with another offense. Biggs contends

that this was a Rule 11 violation.

The problem with Biggs's position is that the Government did not violate the Plea

Agreement. The Plea Agreement specifically provided that:

> The parties do not have an agreement as to the application of the U.S.
> Sentencing Guidelines and leave the calculation of those levels to this
> Court.

Plea, p. 6.

According to the parties' explicit agreement, the Government and Biggs did not

agree to any application of any Guideline section. The entire Sentencing Guidelines were

available for calculating Biggs's sentence. Biggs cannot claim any breach of contract or

Rule violation; he agreed that this Court would calculate the offense levels and determine

a range of punishment. Biggs' argument that the Government breached its Plea

Agreement is specifically rebutted by the express terms of the Plea Agreement. This issue

is without merit and will be denied without an evidentiary hearing.

The remainder of Biggs' issues revolve around his argument that this Court should

not have applied both U.S.S.G. § 3A1.2(c) and § 3C1.2. He argues that the Court should

only have used one of those two sections.

U.S.S.G. § 3A1.2(c)(1) applies as follows:

If, in a manner creating a substantial risk of serious bodily injury, the defendant

or a person for whose conduct the defendant is otherwise accountable –

(1) knowing or having reasonable cause to believe that a person was a law

enforcement officer, assaulted such officer during the course of the offense or

immediate flight therefrom; . . .

increase by 6 levels.

U.S.S.G. § 3C1.2 applies as follows:

> If the defendant recklessly created a substantial risk of death or serious
> bodily injury to another person in the course of fleeing from a law
> enforcement officer, increase by 2 levels.

The effect of those two provisions is to increase a defendant's offense levels by § 3A1.2(c)(1) where the defendant assaults a police officer and to increase a defendant's offense levels again under § 3C1.2 where the defendant's conduct threatens a person other than a law enforcement officer. The two provisions punish different conduct occurring at different times.

In Biggs' case, the evidence at the sentencing hearing established that Biggs, the driver of the getaway car, attempted to ram his car into a police officer's car on two separate occasions during the vehicle chase. The evidence also disclosed that Biggs fled at extremely high rates of speed in two different cities, New Madrid and Portageville, and fled along several highways and roads, endangering the general public. Those two types of harm created by Biggs are more than sufficient to justify the imposition of the two different Sentencing Guidelines provisions above. Biggs's argument that the application of the two Sentencing Guideline provisions is double-counting is simply without merit. Only when the defendant's actions that threaten the police officers and other citizens, in a single, uninterrupted course of conduct, would application of both sections be impermissible double counting. *See United States v. Hayes*, 135 F.3d 435, 438 (6th Cir. 1998).

This circuit and other circuits have recognized that §§ 3A1.2 and 3C1.2 may both be applied to the same defendant, for separate actions in the same case, and does not result in impermissible double counting. *See United States v. Miner*, 108 F.3d 967, 970 (8th Cir. 1997) ("Also, the district court properly increased Miner's offense level for assaulting a police officer when he rammed his car into a police roadblock, and for his chase-related conduct that created a risk of serious injury to other drivers and pedestrians."); *United States v. Swope*, 31 F.3d 482, 483 (8th Cir. 1994); *United States v. Roush*, 527 Fed.Appx 349, 353 (6th Cir. 2013); *United States v. Bevard*, 44 Fed.Appx. 748 (8th Cir. 2002); *United States v. Carroll*, 429 Fed.Appx. 914, 915 (11th Cir. 2011); United States v. Hampton, 628 F.3d 654, 664 (4th Cir. 2010). The overwhelming weight of authority is that the application of both Sections 3A1.2 and 3C1.2 are do not result in impermissible double counting, when the actions that led to each enhancement are separate actions.

Biggs cites a case by the name of *Alexander* as support for his argument, by stating, "In *Alexander*, it became recognized that 'if both (3A1.2(b) and (3C1.2) apply to the defendant, the court must apply 'only' (3A1.) . . .) *United States v. Alexander*, 116 S.Ct. 210)." However, when that actual case cite is examined, it only contains the notation from the Supreme Court that Alexander's petition for a writ of certiorari was denied. It does not contain the holding as cited by Biggs. But an examination of holding of the original case, *United States v. Alexander*, 48 F.3d 1477 (9th Cir. 1995), is revealing.

In *Alexander*, the defendant and other men were convicted of the crime of armed bank robbery and use of a firearm in furtherance of that robbery. After their conviction, the defendants appealed their convictions and sentences. One of the issues raised by the defendants was the application of the same two Guideline enhancements as contested by Biggs, U.S.S.G. §§ 3A1.2 and 3C1.2:

> Similarly, they argue the shots fired at the police during the chase resulted in enhancement not only for assaulting an official victim, under § 3A1.2(b), but also for reckless endangerment of others during flight, under § 3C1.2.

*Id*. at 1492.

That contention was the same basic argument as is now raised by Biggs and it concerns the same two Guidelines sections as Biggs argues are double-counting for the same conduct. The Ninth Circuit rejected Alexander's claims, holding that, "Each of the sentence enhancements applied in this case punished separate harms caused by the distinct conduct on the part of the defendants. *Id*. at 1492.

It appears that Biggs deliberately misstated the holding of Alexander in an attempt to create law that would be favorable to his argument. His cited case actually stands for the opposite proposition than he cited it for. District courts may use both §§ 3A1.2 and 3C1.2 in sentencing defendants, in cases where the defendant's actions assault police officers and, by separate conduct, also threaten the public. Biggs' reckless attempts to escape threatened the general public and his attempts to ram the police car assaulted the police officer. Both sections were applied to Biggs because both sections described his actual conduct.

Biggs also misstates the holding of *United States v. Bevard*, 44 Fed.Appx. 748 (8th Cir. 2002) in his brief. Bevard was convicted and sentenced for being a Felon in Possession of a Firearm. At page 12 of his brief, Biggs states:

> Lastly, in the Bevard Court, ". . . The district court explained that imposing a § 3C1.2 enhancement in addition to the § 3A1.2(b) enhancement would be impermissible double counting. . ." (*United States v. Bevard*, 44 Fed.Appx 748).

Biggs correctly states the position of the district court as reported in that case. What he fails to do is recognize that the Government appealed that holding and that the Eighth Circuit reversed the holding of the district court, finding that application of both sections was <u>not</u> double counting.

> The district court viewed the lengthy chase and the following standoff as one continuous event, but we find the high-speed car chase which endangered citizens is not, for purposes of applying the sentencing guidelines, the "same conduct" as the standoff during which Bevard twice fired his gun in the direction of the police officers. (Citations omitted) Because Bevard's various violent acts occurred at different times and affected different victims, the district court committed error when it refused to enhance Bevard's sentence for reckless endangerment during flight.

*Id.*, at * 2.

In *Bevard*, the Eighth Circuit reaffirmed that both sections of the Guidelines can be applied, when different victims are affected. In Biggs' case, this Court properly applied § 3A1.2(c)(1) to the assault on the police officer and § 3C1.2 for the defendant's acts that recklessly created a substantial risk of death or serious injury to the public in the course of his flight in the city of New Madrid and the city of Portageville.

Biggs also cites a 6th Circuit case as authority for his argument, *United States v. Mills*, 1 F.3d 414 (6th Cir. 1993). The holdings in *Mills* discuss an entirely different issue

than whether §§ 3A1.2 and 3C1.2 can be applied in the same case. In *Mills*, the defendants Mills and Naftzger, burglarized a pharmacy and tried to escape in a car. Mills was driving the getaway car and struck a police car that was trying to stop him. Both Mills and Naftzger were charged with burglary of a pharmacy under 18 U.S.C. § 2118(b). Mills was charged with an enhanced version of that statute, that of 18 U.S.C. § 2118(c)(1). That subsection makes the crime of pharmacy burglary subject to a maximum punishment of up to twenty five years in prison. Subsection 2118(c)(1) applies when a defendant, in committing the pharmacy burglary, assaults any person, or puts in jeopardy the life of any person, by the use of a dangerous weapon or device. The district court in *Mills* improperly used the Aggravated Assault Guideline section for calculating Mills' sentence. The Ninth Circuit remanded the case back for a re-calculation of offense levels using the Burglary Guideline. Neither Mills nor Naftzger were charged with Possession of Controlled Substances With the Intent to Distribute. There was no discussion in *Mills* as to whether it was proper to use both U.S.S.G. §§ 3A2.1 and 3C2.1 for sentencing the same defendant for the same case.

Biggs was charged with exactly this same version of pharmacy burglary and with the companion charge of Possession of Controlled Substances With the Intent to Distribute. The Government added the second charge because it was aware that Biggs' Guideline range would be more (and his sentence larger) than if he were charged with only Pharmacy Burglary. The Government contended that Biggs' actions of attempting to ram the police vehicle made the additional element of the offense pharmacy burglary offense.

Biggs cited the *Mills* case for the proposition that this Court improperly used the Guideline section for Aggravated Assault (U.S.S.G. § 2A2.2) in sentencing Biggs. Biggs contends that this Court should have used the Guideline section for burglary (U.S.S.G. § 2B2.2) for his sentence calculation. (Biggs' brief, p. 11) The main problem with Biggs' analysis is that neither section was used for his sentence calculation. The holding of *Mills* is not applicable to Biggs' case since a different section was used.

Biggs must have ignored the findings of his Presentence Investigation Report that were adopted by this Court. That PSR used a completely different Guideline section for sentence calculation. The Guideline section that was actually applied was U.S.S.G. § 2D1.1(c)(8), which was the Guideline section for Possessing Controlled Substances With the Intent to Distribute. That section was used since it generated a higher offense level. Counts I and II were grouped together for Guideline calculation purposes. PSR, ¶ 25, 26. Biggs received a base offense level of 24 under that section. The enhancements under §§ 3A1.1 and 3C1.1 were added as Chapter 3 enhancements, and were not related to relevant conduct under the offense conduct sections. As noted earlier, several cases allow the use of both Guideline sections, so long as there is proof of an assault to an officer and a separate threat of injury to the general public.

**Supplemental Issue #1. Ineffective Assistance of Counsel – Failure to Raise an "Owens" Claim for Charging Different Drugs in the Same Count.**

Biggs contends that the Government's decision to charge Biggs with possession of three different controlled substances with the intent to distribute was improper and that his sentence, based upon all those drugs listed without objection by his counsel, was

ineffective assistance of counsel. The record demonstrates that Biggs' rights were not violated and his attorney was not ineffective.

Biggs was charged with two counts, just like his confederates, Troy D. Stephenson and Martinez M. Warren. Count I charged that all three men, aided and abetted by each other, entered Davis Pharmacy with the intent to steal from that store a quantity of controlled substances exceeding $500, and that the defendant's traveled in interstate commerce to accomplish that robbery, all in violation of 18 U.S.C. §§ 2118(b) and (c) and § 2. Count II of that Indictment charged that Biggs and his two co-defendants, aided and abetted by each other, possessed with the intent to distribute oxycodone, hydrocodone and morphine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The maximum punishment allowable for Count I was 25 years and 20 years for Count II. Biggs pled guilty to both counts of the Indictment on July 17, 2014. He was sentenced on December 1, 2014, to a sentence of 151 months on each count, to be served concurrently. His sentence on Count II was calculated by converting all the drugs involved in his case, methylphenidate, morphine, oxycodone and hydrocodone, to its marijuana equivalent. PSR, p. 7. Biggs's guideline range was then calculated on the equivalent amount of marijuana, between 100 kilograms and 400 kilograms of marijuana, just as is required by § 2D1.1 of the Sentencing Guidelines.

Biggs' complaint as to this issue involves only Count II. Even if this Court were to vacate Biggs's sentence, he would still face exactly the same prison sentence under Count I as he will with both sentences. By attacking only one sentence of two equal sentences,

Biggs cannot establish that he was prejudiced by a sentence on just one of those counts. In any event, Biggs' legal conclusions as to his sentence on Count II are simply incorrect.

Biggs contends that his sentence was somehow artificially inflated by the inclusion of three different drugs in his indictment that involved drugs from both Schedule II and Schedule III controlled substances. He contends that he should have been sentenced for Schedule III drugs and not for Schedule II drugs. As authority, he cites the case of *United States v. Owens*, 904 F.2d 411 (8th Cir. 1990).

In *Owens*, the defendant was convicted after a jury trial of the offense of "conspiracy to distribute and possess with intent to distribute and manufacture and attempt to manufacture methamphetamine/amphetamine." The Indictment charged the controlled substance description as methamphetamine/amphetamine. After conviction, the defendant appealed, contending that his sentence based on the higher range of punishment for a quantity of methamphetamine was improper. The Eighth Circuit agreed, holding that the district court should have submitted a special verdict instruction to the jury so they could determine what quantity of any particular controlled substance was involved. *Id.*, at 415. The *Owens* Court remanded the case back for re-sentencing using the lower offense level of amphetamine. *Id.*

However helpful that the holding of *Owens* might be to Biggs' facts, he fails to recognize that this holding of Owens was specifically overruled in *United States v. Brown*, 148 F.3d 1003. The holding of *Brown* is instructive as to why Biggs' theory is simply not the law:

Next, Brown contends that because the jury was not asked to make a specific finding regarding the nature of the drug or drugs involved in the conspiracy, the court should have assumed at sentencing that the jury must have concluded that only powder cocaine was involved, a result that would have produced a more lenient sentence. In support of his argument, Brown cites *United States v. Owens*, 904 F.2d 411, 413–15 (8th Cir.1990). There, we stated that where *1011 "the establishment of [a defendant's] base offense level required a determination of which drug the conspiracy involved," and "the Sentencing Guidelines provide disparate sentencing ranges" for the substances alleged to be involved, the court should employ "a special verdict form to permit the jury to indicate which substance it found to be the object of the conspiracy." *Id*. at 415. We did so because we concluded that, "[b]y instructing the jury on an 'either/or' basis with respect to the two substances and by failing to enable the jury to indicate which of the substances it found the conspiracy to have involved, the district court elicited an ambiguous verdict of guilty with two possible interpretations." *Id*. We held that the district court erred in sentencing a defendant "based on the alternative which yielded a higher sentencing range." *Id*.; *see also United States v. Wiggins*, 104 F.3d 174, 177–78 (8th Cir.1997); *United States v. Baker*, 16 F.3d 854, 857–58 (8th Cir.1994); *United States v. Watts*, 950 F.2d 508, 514–15 (8th Cir.1991).

Brown's argument is foreclosed by the Supreme Court's recent decision in *Edwards v. United States*, 523 U.S. 511, —— – ——, 118 S.Ct. 1475, 1477–78, 140 L.Ed.2d 703 (1998), which effectively overruled *Owens*. In *Edwards*, as here, the defendant was charged with conspiring to distribute both powder and crack cocaine in violation of sections 841 and 846 of Title 21. *See id*. at 1476–77. "The jury returned a general verdict of guilty. And the judge imposed sentences based on his finding that each petitioner's illegal conduct had involved both cocaine and crack." *Id*. at 1477.

The Court rejected the argument that the lower court erred in imposing a sentence based upon its finding that the conspiracy involved crack, despite a verdict that was technically ambiguous on that precise matter. Instead, it held that the Sentencing Guidelines instruct the judge, and not the jury, "to determine both the amount and the kind of 'controlled substances' for which a defendant should be held accountable—and then to impose a sentence that varies depending upon amount and kind." *Id*. Thus, "regardless of the jury's actual, or assumed, beliefs about the conspiracy, the Guidelines nonetheless require the judge to determine whether the 'controlled substances' at issue—and how much of those substances—consisted of cocaine, crack, or both." *Id*. That is precisely what the district court did in this case.

*Brown*, 148 F.3d at 1010-11.

This Court did exactly as was required by the Sentencing Guidelines and the holdings of *Edwards* and *Brown* reported above. This Court, not the jury, is to make its determinations as to the quantity of drugs involved and impose a sentence based upon that court-determined quantity. The proper Guidelines procedure was followed.

Biggs also cites other cases in his memorandum that are equally inapplicable to his case. He cites *United States v. Baker*, 16 F.3d 854 (8th Cir. 1993) for the proposition that when a defendant is convicted by an ambiguous verdict that is susceptible of two interpretations for sentencing purposes, he may not be sentenced based upon the alternative producing the higher sentencing range. Biggs has correctly reported a well-known legal principle from that case. What Biggs failed to report, was the significant factual difference between *Baker* and his case. In *Baker*, the defendant was convicted of possession of crack cocaine (not distribution) and managing a residence for the purpose of distributing or using crack cocaine. *Baker*, 16 F.3d at 854. The district court found that the second charge was a "controlled substance offense" and that Baker was a Career Offender. The Eighth Circuit found that the classification of Baker as a Career Offender was incorrect in that there was no proof that the second charge was a charge involving the distribution of a controlled substance. There was no holding that Baker's indictment was improper because he was charged with two different drug quantities in the same count. There is no similarity in Baker's case and Biggs'.

Biggs cites the Fifth Circuit case of *United States v. Bounds*, 180 F.3d 216 (5th Cir. 1999) as authority for his argument. *Bounds* announced a similar rule to that found in *Owens*, that a district court must either have the jury specify the quantity of drugs used

for sentencing or sentence the defendant at the lower drug level. Once again, Biggs ignores the fact that the holding of *Bounds* has been overruled, in that case by *United States v. Green*, 180 F.3d 216 (5th Cir. 1999). Like occurred in the Eighth Circuit, the Fifth Circuit noted that its rule announced in Bounds was overruled by the Supreme Court in Edwards. Green, 180 F.3d at 224.

Biggs also cites *United States v. Vann*, 660 F.2d 771 (4th Cir. 2011) as support for his argument. But since *Vann* is a case deciding whether the defendant was an Armed Career Criminal for purposes of sentencing after being found guilty of being a felon in possession of a firearm, its holdings have no applicability to Biggs'case.

Biggs' argument that this court committed error by using all the drugs charged in the indictment and found to be relevant conduct is without merit. Biggs' authority has either been overruled or is does not support his argument. Biggs' reliance on *Owens* is incorrect. There was no error by this Court in sentencing Biggs, and absolutely no ineffective assistance of counsel by his attorney.

## Supplemental Issue #2. Ineffective Assistance of Counsel – Misadvised the Petitioner as to the Consequences of the Conviction.

In this point, Biggs claims that his attorney made a statement to him that he would only get 24 months for his sentence and that he should just go ahead and admit that he put the lives of the officers in jeopardy. He implies that his admission was false. A quick review of the record demonstrates that Biggs' representations are false.

The defendant made the exact same argument in *Hollis v. United States*, 687 F.2d 257 (8th Cir. 1977). Hollis asserted that his attorney incorrectly represented that he would

only get five years imprisonment instead of the twenty five year sentence that he actually

got. The Eighth Circuit held that a defendant who relies on an attorney's mistaken

representation as to the length of the sentence may not set his plea aside where the

defendant was warned in court that his sentence rests within the discretion of the district

court and where that defendant states that no promises as to his sentence were made:

> Hollis argues that his guilty plea was involuntary because he relied on his attorney's representations that the maximum sentence Hollis would receive would be five years. Hollis also argues that his attorney failed to inform him of the maximum sentence allowed under the statute.
>
> The district court found that although Hollis and his attorney may have believed the sentence would not exceed five years, their expectations were based only on the attorney's opinion. The rule is clear that a defendant cannot set aside a guilty plea merely because he relied on his attorney's opinion that the sentence would be a lenient one. *Greathouse v. United States*, 548 F.2d 225, 228 n.6 (8th Cir.), cert. denied, 434 U.S. 838, 98 S.Ct. 130, 54 L.Ed.2d 100 (1977). Where "a defendant is invariably informed that the sentencing decision rests solely in the discretion of the trial court," *United States v. Goodman*, 590 F.2d 705, 711 (8th Cir.), cert. denied, 440 U.S. 985, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979), and where the defendant states at the sentencing hearing that he understood the negotiated plea and that there were no promises other than the plea agreement, *Pennington v. Housewright*, 666 F.2d 329, 332 (8th Cir. 1981), cert. denied, -- U.S. --, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982), the plea will not be set aside as involuntary.

*Hollis*, 687 F.2d at 260. *See also United States v. Quiroga*, 554 F.3d 1150, 1156 (8th Cir.

2009).

The record at sentencing makes it clear that Biggs understood fully well that his

sentence was entirely at the discretion of this Court and that no sentencing promises had

been made:

Court: And do you understand the contents of the agreement?

Biggs: Yes, sir.

Court: Is there anything in here that you do not understand?

Biggs: I understand everything.

Court: Okay. Now, have any promises been made by anyone to get you to plead guilty other than the promises set out in this agreement?

Biggs: No, sir.

Plea Tr. pp. 8, 9.

Court: Now, has your lawyer explained to you the sentencing guidelines?

Biggs: Yes, sir.

Court: So you'll know, after your plea I'll get with the probation office, and we will determine what your criminal history is, and we will also determine the total offense level for these particular offenses. And those are the two factors that go into the calculation of the sentencing guidelines. Do you understand that's how it works?

Biggs: Yes, sir.

Court: And if you disagree with our determination, you'll be allowed to challenge that: You know that too, don't you?

Biggs: Yes, Your Honor.

Court: Now, the guidelines, though, whatever they turn out to be, are simply guidelines, and by that I mean I can impose a sentence against you that's above the guidelines or a sentence that's below the guideline: Do you understand that too?

Biggs: Yes, sir.

Court: What I am bound by is the statutory penalty. That's on page 5. For Count I

it's imprisonment of up to 25 years, a fine of up to $250,000 or a combination of imprisonment and fine. And after your release there would be a period of supervised release of up to five years.

Then for Count 2 the punishment is imprisonment for up to 20 years, or, again a fine of up to $250,000, or a combination of imprisonment and fine, and the supervised release period for Count 2 would be up to three years: Do you understand all that?

Biggs: Yes, sir.

Court: So it's 25 years on Count 1, up to 20 years on Count 2.

Biggs: Yes, sir.

Court: I'm going to consider the full range of punishment for these offenses, and the sentence will be at my discretion. Do you understand?

Biggs: Yes, sir.

Court: So with that in mind has anyone told you or promised you what sentence you'll receive in the case?

Biggs: No, sir. They just went over the guidelines.

Court: Well, I'm going to consider the full range of punishment. And that may be above or may be below the sentencing guidelines: Do you understand that too?

Biggs: Yes, sir.

Plea Tr. pp. 10-12.

The record at sentencing makes it clear that Biggs knew that his sentence would be at the discretion of this Court. And, in spite of what Biggs says in his most recent

39

pleading, his sworn statements to this Court were that no promises of a sentence were made by anyone, not even his attorney. Even if Biggs' attorney would have made an incorrect statement as to his belief as to Biggs' final sentence, that would not be sufficient for Biggs to set aside his guilty plea, when he admitted to the Court that he knew his sentence would be within this Court's discretion and that absolutely no promises as to that final sentence had been made. Biggs' assertions that his attorney made some kind of representation as to his sentence are provably false, given his sworn testimony at his plea hearing. His grounds are not sufficient to result in setting his guilty plea aside.

**Supplemental Issue #3. Ineffective Assistance of Counsel – Failure to Object to the Six Point Sentencing Enhancement.**

In this point, Biggs contends that the six-level enhancement under U.S.S.G. § 3A1.2(c)(1) was improper, contending that his assault of the officer occurred at a time not during the offense or the immediate flight therefrom. That is a difficult position to take, given the admitted facts of the case. Those facts, as admitted by the defendant in the plea agreement were:

> On January 12, 2014, at around 2:46 a.m., Craig Nelson and his wife, Cynthia Nelson, were asleep in their home on Mott Street in New Madrid, Missouri. They were startled from their sleep by the sound of a car door slamming and their dog barking. The Nelsons looked out of one of their windows and saw a silver Buick vehicle backed up to the front door of Davis Pharmacy. Two men were out of the car. One of the men broke the glass out of the front door. Both of those men entered the pharmacy. A third person was seated in the Buick. Mrs. Nelson called the New Madrid police department to report the burglary.
> After a few minutes, the two men came out of the pharmacy, carrying large duffel bags. They got in the Buick, which drove off the parking lot. The Nelsons saw a New Madrid police vehicle arrive at the parking lot just behind the Buick. Officer John Dubois was driving the New Madrid police vehicle. He began chasing after the Buick. Other officers were called to the chase, which continued to Highway 55 and onto side roads. During the chase, the occupants of the Buick

began throwing items out of the Buick. The officers later recovered some of those items, which included medications stolen from Davis Pharmacy, clothing and a wood maul.

The officers were able to get two of their patrol cars in front of the Buick. The driver of the Buick attempted to ram the Buick into the officers' cars, putting the lives of the officers at risk. The officers managed to evade the Buick. The chase continued for several miles until the officers began shooting at the Buick with their firearms. The Buick then turned into the Pilot Truck Stop parking lot and stopped. Officers arrived and arrested the occupants of the Buick. Those occupants were Troy D. Stephenson, Billy G. Biggs and Martinez M. Warren. The Buick was a rental vehicle that had been driven by Stephenson, Biggs and Warren from their homes in Memphis, Tennessee, that same day as the burglary.

Davis Pharmacy employees examined the store and determined that $27,243.66 in prescription medications had been stolen. Those stolen medications included oxycodone, hydrocodone and morphine. The total amount of drugs stolen amounted to $27,243.66. Repairs to the Davis Pharmacy building totaled $815.62. Davis Pharmacy is a pharmacy that was registered with the Drug Enforcement Administration under Section 302 of the Controlled Substances Act. The employees determined that only selected medications were taken. The medications taken by Stephenson, Biggs and Warren are commonly sold illegally. Officers reviewed the types of medications taken by Stephenson, Biggs and Warren and came to the opinion that the three men took the medications in order to distribute them to others for cash or other consideration and that the medications were not to be used for their personal use.

The location of the burglary of Davis Pharmacy by the defendant was in New Madrid County, Missouri, within the Eastern District of Missouri.

Biggs takes the position that a chase that started while the Buick he was driving was in the parking lot of the store he burglarized was not during the "immediate flight" from the offense. His position is neither legally nor factually sound.

Biggs states, in his brief, that "there was at least a 10 minute delay between the burglary and the police chase." Biggs' Brief, p. 10. That statement, which is the reason for Biggs'contention, is completely and provably false. In particular, Biggs admitted:

After a few minutes, the two men came out of the pharmacy, carrying large duffel bags. They got in the Buick, which drove off the parking lot. The Nelsons saw a New Madrid police vehicle arrive at the parking lot just behind the Buick. Officer

John Dubois was driving the New Madrid police vehicle. He began chasing after the Buick.

There wasn't a ten minute gap between the burglary and the police chase. The police chase began while Biggs was still driving off the pharmacy parking lot. His most recent statement, that there was a ten minute delay between the burglary and the police chase, is not supported by the evidence nor Biggs' sworn statements to this Court that the Statement of Facts in the Plea Agreement was true.

It is true, as alleged in Biggs' brief, that the police chase lasted 50 minutes and covered 55 miles. But the chase never stopped during that entire time.

The provisions of the sentencing guideline at issue in the point state:

> If, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable –
> (1) knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom; . . . increase by 6 levels.

U.S.S.G. § 3A1.2(c)(1).

Biggs' assault of the law enforcement officer occurred during his immediate flight from the scene of the burglary. The application of § 3A1.2(c)(1) was appropriate. There was no error committed by either this Court or Biggs' attorney.

As a last resort, Biggs contends that the guideline's use of the term "assault" is ambiguous and that somehow this results in the guideline being inapplicable as a violation of Biggs' due process rights. Biggs does not explain that legal theory and this Court has no idea of how that guideline provision could affect Biggs' due process rights.

Because Biggs has not set forth any authority or factual argument for that position, it will be rejected by this Court.

The term "assault" is not ambiguous. That term is defined by Black's Legal Dictionary as "any willful attempt or threat to inflict injury upon the person of another, when coupled with an apparent present ability so to do, and any intentional display of force such as would give the victim reason to fear or expect immediate bodily harm." Biggs admitted that "The driver of the Buick attempted to ram the Buick into the officers' cars, putting the lives of the officers at risk" as set forth in his written plea agreement. This conduct is quite plainly an assault on law enforcement officers.

## CONCLUSION

For the foregoing reasons, this Court denies Biggs' § 2255 petition, without a hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Biggs has not made a substantial showing of the denial of a federal constitutional right.

Dated this 18th day of December, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE